```
 1  Vanessa R. Waldref
 2  United States Attorney
    Eastern District of Washington
 3  Tyler H.L. Tornabene
 4  Dan Fruchter
    Assistant United States Attorneys
 5  Post Office Box 1494
 6  Spokane, WA 99210-1494
    Telephone: (509) 353-2767
 7
```

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 22 2022

SEAN F. McAVOY, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN LAWRENCE MURPHY,<br><br>Defendant. | Case No.: 2:22-CR-84-TOR-1<br><br>Plea Agreement |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Tyler H.L. Tornabene, and Dan Fruchter, Assistant United States Attorneys for the Eastern District of Washington, and Defendant Stephen Lawrence Murphy ("Defendant"), both individually and by and through Defendant's counsel, Robert M. Seines, agree to the following Plea Agreement.

1. <u>Guilty Plea and Maximum Statutory Penalties</u>

Defendant agrees to enter a plea of guilty to Count 8 of the Indictment filed on July 19, 2022, which charges Defendant with False, Fictitious, or Fraudulent Claims, in violation of 18 U.S.C. § 287, a Class D felony.

Defendant understands that the following potential penalties apply:

    a. a term of imprisonment of not more than 5 years;

PLEA AGREEMENT – 1

    b. a term of supervised release of up to 3 years;

    c. a fine of up to $250,000;

    d. restitution; and

    e. a $100 special penalty assessment.

2. <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision up to 2 years in prison.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

    a. sentencing is a matter solely within the discretion of the Court;

    b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

    c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

    d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

PLEA AGREEMENT – 2

  e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

  f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4. <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

  a. pleading guilty in this case may have immigration consequences;

  b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

  c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

  d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5. <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

  a. the right to a jury trial;

PLEA AGREEMENT – 3

      b.    the right to see, hear and question the witnesses;

      c.    the right to remain silent at trial;

      d.    the right to testify at trial; and

      e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.    <u>Elements of the Offense</u>

The United States and Defendant agree that in order to convict Defendant of False, Fictitious, or Fraudulent Claims, in violation of 18 U.S.C. § 287, the United States would have to prove the following beyond a reasonable doubt.

    a.  *First*, in the Eastern District of Washington and elsewhere, Defendant knowingly presented a false claim to the U.S. Small Business Administration (SBA), an agency of the United States;

    b.  *Second*, Defendant knew that the claim was false or fraudulent at the time it was made; and

    c.  *Third*, the false or fraudulent claim was material to the SBA; that is, it had the tendency to influence, or was capable of influencing, the SBA to part with money or property.

7.    <u>Factual Basis and Statement of Facts</u>

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond

PLEA AGREEMENT – 4

a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

The Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act) was a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and other certain expenses, through a program referred to as the Paycheck Protection Program ("PPP").

In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the applicant (through its authorized representative) was required to state, among other things: (a) its average monthly payroll expenses; and (b) its number of employees. If the applicant had no employees other than the owner, the applicant was required to provide the gross income amount from a 2019 or 2020 IRS Form 1040, Schedule C. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. Additionally, the applicant was required to certify that they were in operation as of February 15, 2020. The applicant was also required to certify that the information in the application was true and correct to the best of the applicant's knowledge.

PLEA AGREEMENT – 5

A business's PPP loan application was received and processed, in the first instance, by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. Data from the application, including information about the borrower, the total amount of the loan, the listed number of employees, and the gross income amount, was transmitted by the lender to the Small Business Administration ("SBA"), an agency of the United States, in the course of processing the loan.

Beginning no later than on or about March 20, 2021, and continuing through at least September 8, 2021, in the Eastern District of Washington and elsewhere, Defendant and his spouse devised and intended to devise a scheme to defraud the SBA, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises. On or about September 11, 2020, Defendant and his spouse opened a joint checking account ending in 9587 at Capital One Bank, National Association ("Defendant's Joint Capital One Checking Account"). On or about March 1, 2021, Defendant and his spouse opened a performance savings account ending in 6375 at Capital One Bank, National Association ("Defendant's Joint Capital One Savings Account").

As part of the fraudulent scheme, on or about March 16, 2021, Defendant's spouse submitted an application for PPP loan number 5015588605 to the SBA containing material falsities which Defendant's spouse certified were true and correct to the best of her knowledge, under penalty of perjury and of other criminal penalties for false information. On or about March 31, 2021, as a result of the fraudulent scheme, and the materially false and fraudulent information supplied by Defendant's spouse, Fountainhead SBF, LLC, acting on a delegated basis from SBA, disbursed $20,833 in SBA PPP funding into Defendant's Joint Capital One Checking Account. As part of the fraudulent scheme, on or about August 26, 2021, Defendant's spouse fraudulently requested loan forgiveness of the entire PPP loan amount.

PLEA AGREEMENT – 6

1    On or about March 23, 2021, Defendant submitted an application for PPP loan number 1741018703 to the SBA in the name of his purportedly active company in his own name, that is, "Stephen Murphy." Defendant falsely and fraudulently stated in the application for PPP loan number 1741018703 that his purported business had earned $100,000 in gross income in calendar year 2020, and that its average monthly payroll was $8,333.33. Based on that information, Defendant requested a PPP loan for the purported business in the amount of $20,833.

Defendant certified that the information in the application was true and correct to the best of his knowledge, under penalty of perjury and of other criminal penalties for false information. These representations were materially false and fraudulent. Neither Defendant nor his purported business had gross income of $100,000 in calendar 2020. Accordingly, neither the purported business nor Defendant were eligible for any PPP funding.

On or about April 14, 2021, as a result of the fraudulent scheme and the materially false and fraudulent information supplied by Defendant, Harvest Small Business Finance, LLC, acting on a delegated basis for the SBA, disbursed $20,833 into Defendant's Joint Capital One Savings Account. As part of the fraudulent scheme, on or about that same day, April 14, 2020, $20,000 of the fraudulently obtained funds were transferred into Defendant's Joint Capital One Checking Account. As part of the fraudulent scheme, on or about September 8, 2021, Defendant fraudulently requested loan forgiveness of the entire PPP loan amount.

As part of the fraudulent scheme, on or about April 12, 2021, Defendant's spouse submitted an application for PPP loan number 3419228806 to the SBA containing material falsities which Defendant's spouse certified were true and correct to the best of her knowledge, under penalty of perjury and of other criminal penalties for false information. On or about April 28, 2021, as a result of the

PLEA AGREEMENT – 7

fraudulent scheme and the materially false and fraudulent information supplied by Defendant's spouse, Fountainhead SBF, LLC, acting on a delegated basis for the SBA, disbursed $20,833 into Defendant's Joint Capital One Checking Account. On or about August 26, 2021, as a result of the fraudulent scheme, Defendant's spouse fraudulently requested loan forgiveness of the entire PPP loan amount.

8. The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss Counts 1 through 6 of the Indictment filed on July 19, 2022, which charge Defendant with Wire Fraud in violation of 18 U.S.C. § 1343.

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on the criminal activity set forth in this Plea Agreement that arises out of Defendant's conduct involving illegal activity charged or identified as a result of this investigation, unless Defendant breaches this Plea Agreement before sentencing. Nothing in this agreement is intended to release any liability arising under Title 26, United States Code (Internal Revenue Code).

9. United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a. Base Offense Level

The United States and the Defendant agree that the base offense level for False, Fictitious, or Fraudulent Claims, in violation of 18 U.S.C. § 287, is 6. U.S.S.G. § 2B1.1(a)(2).

b. Special Offense Characteristics

The United States and the Defendant agree that Defendant's base offense level is increased by 6 levels because the loss amount was more than $40,000, but less than $95,000. See U.S.S.G. § 2B1.1(b)(1)(D). The parties are not aware of any other specific offense characteristics that apply

  c. <u>Acceptance of Responsibility</u>

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), if Defendant does the following:

  i. accepts this Plea Agreement;
  ii. enters a guilty plea on before November 22, 2022;
  iii. demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;
  iv. provides complete and accurate information during the sentencing process; and
  v. does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

  d. <u>No Other Agreements</u>

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

PLEA AGREEMENT – 9

    e.    Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

10. Incarceration

The United States agrees to recommend a sentence at or below the low end of the Guidelines, as calculated by the Court.

Defendant may recommend any legal sentence.

11. Supervised Release

The United States and Defendant each agree to recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a.    Defendant will provide financial information and copies of federal income tax returns, and allow credit checks, at the direction of the United States Probation Office;

    b.    Defendant shall disclose all assets and liability to the United States Probation Office and shall not transfer, sell, give away, or otherwise convey or secret any asset, without the advance approval of the United States Probation Office;

PLEA AGREEMENT – 10

  c. Defendant is prohibited from incurring any new debt, opening new lines of credit, or enter any financial contracts or obligations without the prior approval of the United States Probation Office; and

  d. Defendant shall participate in and complete financial counseling and life skills programs at the direction of the United States Probation Office.

12. Criminal Fine

The parties agree to recommend no additional criminal fine.

13. Mandatory Special Penalty Assessment

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

14. Restitution

The United States and Defendant agree that restitution is appropriate and mandatory, without regard to Defendant's economic situation, to identifiable victims who have suffered physical injury or pecuniary loss, pursuant to 18 U.S.C. §§ 3663A, 3664.

Pursuant to 18 U.S.C. § 3663(a)(3), Defendant voluntarily agrees to pay restitution for all losses caused by Defendant's individual conduct, in exchange for the United States not bringing additional potential charges, regardless of whether counts associated with such losses will be dismissed as part of this Plea Agreement. With respect to restitution, the United States and Defendant agree to the following:

  a. Restitution Amount and Interest

The United States and Defendant stipulate and agree that, pursuant to 18 U.S.C. §§ 3663, 3663A and 3664, the Court should order restitution in an amount of at least $62,499, which consists of at least $20,833 for PPP Loan #5015588605,

PLEA AGREEMENT – 11

at least $20,833 for PPP Loan #1741018703, and at least $20,833 for PPP Loan #3419228806, and that any interest on this restitution amount, if any, should be waived. Defendant's restitution obligation shall be entered jointly and severally with co-Defendant Stephanie Brock Murphy for the full amount of the restitution ordered at sentencing. The United States reserves the right to request additional restitution for the amounts owed to SBA related to these three PPP Loans, including but not limited to, loan origination fees, recording fees, accrued interest, and other loan costs.

        b.    <u>Payments</u>

To the extent restitution is ordered, the United States and Defendant agree that the Court will set a restitution payment schedule based on Defendant's financial circumstances. 18 U.S.C. § 3664(f)(2), (3)(A). Regardless, Defendant agrees to pay not less than 10% of Defendant's net monthly income towards restitution.

        c.    <u>Treasury Offset Program and Collection</u>

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant understands that the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. 18 U.S.C. §§ 3572, 3613, and 3664(m).

Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until Defendant's fine and restitution obligations are paid in full, Defendant

PLEA AGREEMENT – 12

agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees to provide waivers, consents, or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

        d.    <u>Notifications and Waivers</u>

Defendant agrees to notify the Court and the United States of any material change in Defendant's economic circumstances (e.g., inheritances, monetary gifts, changed employment, or income increases) that might affect Defendant's ability to pay restitution. 18 U.S.C. § 3664(k). Defendant also agrees to notify the United States of any address change within 30 days of that change. 18 U.S.C. § 3612(b)(1)(F). These obligations cease when Defendant's fine and restitution obligations are paid in full.

Defendant acknowledges that the Court's decision regarding restitution is final and non-appealable; that is, even if Defendant is unhappy with the amount of restitution ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or restitution order.

15.    <u>Payments While Incarcerated</u>

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16.    <u>Additional Violations of Law Can Void Plea Agreement</u>

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of

PLEA AGREEMENT – 13

sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives all of Defendant's rights to appeal Defendant's conviction and the sentence the Court imposes.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18. Compassionate Release

In consideration for the benefits Defendant is receiving under the terms of this Plea Agreement, Defendant expressly waives Defendant's right to bring any motion for Compassionate Release other than a motion arising from one of the specific bases set forth in this paragraph of this Plea Agreement. The United States retains the right to oppose, on any basis, any motion Defendant files for Compassionate Release.

The only bases on which Defendant may file a motion for Compassionate Release in the Eastern District of Washington are the following:

    a. Medical Condition of Defendant

PLEA AGREEMENT – 14

        i.      Defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia; or

        ii.     Defendant is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which Defendant is not expected to recover.

  b.    <u>Age of Defendant</u>

        i.      Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process; and has served at least 10 years or 75 percent of Defendant's term of imprisonment, whichever is less; or

        ii.     Defendant is at least 70 years old and has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which Defendant is imprisoned.

  c.    <u>Family Circumstances</u>

        i.      The caregiver of Defendant's minor child or children has died or become incapacitated, and Defendant is the only

PLEA AGREEMENT – 15

      available caregiver for Defendant's minor child or children; or

   ii. Defendant's spouse or registered partner has become incapacitated, and Defendant is the only available caregiver for Defendant's spouse or registered partner.

 d. <u>Subsequent Reduction to Mandatory Sentence</u>

   i. Defendant pleaded guilty to an offense which, on the date of Defendant's guilty plea, carried a mandatory minimum sentence; and

   ii. after the entry of judgment, the length of the mandatory minimum sentence for Defendant's offense of conviction was reduced by a change in the law; and

   iii. the application of the reduced mandatory minimum sentence would result in Defendant receiving a lower overall sentence.

 e. <u>Ineffective Assistance of Counsel</u>

   i. Defendant seeks Compassionate Release based on a claim of ineffective assistance of counsel arising from information that Defendant both

     1. did not know at the time of Defendant's guilty plea, and

     2. could not have known, in the exercise of due diligence, at the time the Court imposed sentence.

19. <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

 a. this Plea Agreement shall become null and void;

PLEA AGREEMENT – 16

  b. the United States may prosecute Defendant on all available charges;

  c. The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

  d. the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

20. <u>Integration Clause</u>

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

PLEA AGREEMENT – 17

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____     11-22-22
Tyler H.L. Tornabene                 Date
Assistant United States Attorney

_____     11/22/22
Dan Fruchter                         Date
Assistant United States Attorney

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____     11·22·2022
Stephen Lawrence Murphy              Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets

PLEA AGREEMENT – 18

forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____     _11-22-22_
Robert M. Seines                                   Date
Attorney for Defendant

PLEA AGREEMENT – 19