

Colin Prince
Chief Appellate Attorney
10 North Post Street, Suite 700
Spokane, Washington 99201
509.624.7606
Attorney for Stephanie Murphy

UNITED STATES DISTRICT COURT
Honorable Thomas O. Rice

| | |
|---|---|
| United States,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>Stephanie Murphy,<br><br>　　　　　　　Defendant. | No. 22-cr-84-TOR<br><br>Sentencing Memorandum |

# I. Introduction

Stephanie Murphy respectfully asks the Court for a sentence of time-served[1] followed by three-years supervised release and restitution of $62,499.

# II. Discussion

This sentencing memorandum will discuss a few issues, but we respectfully ask the Court to focus on two themes that are particularly relevant here: family and work.

### A. The Court should impose a time-served sentence and three-years supervised release.

Stephanie Murphy respectfully submits that a time-served sentence followed by three-years supervised release satisfies the Sentencing Reform Act's goals: retribution,[2] deterrence,[3] public safety,[4] and rehabilitation.[5] That is true for four reasons:

*First*, Ms. Murphy's history—her arc into addiction and her self-propelled rise back to sobriety—are critical to fashioning a just sentence. The short story is this: Ms.

---

[1] Ms. Murphy was arrested on the charge. *See* ECF No. 30.

[2] Commonly referred to as the "retribution" factor, the Sentencing Reform Act requires courts to consider the "seriousness of the offense," the need to "promote respect for the law, and to provide just punishment." 18 U.S.C. § 3553(a)(2)(A).

[3] The Sentencing Reform Act requires that courts impose sentences that are sufficient, but no more than necessary, to "deter[] . . . criminal conduct." 18 U.S.C. § 3553(1), (2)(B).

[4] The Sentencing Reform Act requires courts to impose a sentence "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).

[5] The Sentencing Reform Act asks courts to consider "needed educational or vocational training, medical care, or other correctional treatment" in imposing sentence. 18 U.S.C. § 3553(a)(2)(D).

Sentencing Memo
– 1 –

Murphy was raised well and has nothing but good things to say about her parents. This isn't the typical story of drug addiction.

The key paragraph in the PSR is No. 121. Ms. Murphy was 30-years old and working SpokAnimal, a local animal shelter and humane society. Her life centered around her work—it was her social circle and her financial support. As she told Probation during her PSR interview, it was also what introduced her to drugs. She had a close group of friends that got together regularly to play cards and simply spend time together, and one night, someone's sister offered the entire group methamphetamine. It became the group's regular habit.

It soon led to her termination. At some point, a supervisor at SpokAnimal found methamphetamine (or paraphernalia) belonging to one of Ms. Murphy's co-workers. To avoid the consequences, she blamed Ms. Murphy (which Ms. Murphy adamantly denies). But she was fired. The same friend blamed Ms. Murphy within their friend group.

In short order, Ms. Murphy lost her job and her social circle. She spiraled. According to Ms. Murphy, the addiction grew until she was using multiple times a day. (Note: this is exactly consistent with Ms. Murphy's criminal history. She had never been arrested before age 30.[6]

---

[6] See PSR ¶ 47.

And she cut ties to her family. Why? Ms. Murphy is clear: embarrassment. Horrible, all-consuming embarrassment. Her parents raised her better than to be an addict—and she knew it. She simply could not look her parents or siblings in the eye, and so stopped communicating.

Here is the interesting thing about Ms. Murphy (and Mr. Murphy, for that matter): she self-corrected. At the time of the offense, the Murphys were living with Stephen's mother, an addict herself who lived in a semi-typical dope house, replete with addicts coming and going. But Stephen's mother died, and the Murphys left her house.

That was the moment to change. And they took it. As Ms. Murphy explained to counsel, she and her husband simply recognized that they didn't want to live in addiction anymore. So they stopped.

Ms. Murphy explains that the real support was family—she reached out to her family and re-engaged. She and Stephen began going to church and created a sober support system.

And they grounded themselves in work. Stephen's grandfather owns the Fort Spokane Store and Restaurant[7] in Davenport:

---

[7] Here's their [website](website).



Every day, Stephen and Stephanie get up, stock the shelves, prepare food, and run the store. Indeed, today, when counsel sought to confirm a few items for this memo, Ms. Murphy was in the store and had been cooking all morning. In fact, the Murphys now live directly behind the restaurant.

They are intending to buy the store from Mr. Murphy's grandparents but are waiting on this sentencing—everything rides on the outcome of this case.

There is a point that the defense wants to ensure isn't lost: the Murphys did transformed their lives on their ***own*** motivation. Their rise out of addiction and return to family and work and a regular life all occurred ***before*** they were federally charged, arrested, or had any idea a prosecution was coming.

This same sentiment—that Stephanie and Stephen intentionally rejoined their families and community—is reflected in the support letters this Court will see, including this from Leanne and Paul Weber:

> When Steve and Stephanie re-joined this community recently, they made it clear that they were here to work and become a part of something. They run a great business out of the Fort Spokane Store and Restaurant owned by Bob and Peggy Uhler. They work very hard and do their best to accommodate and please their patrons. They have been innovative and have become an integral part of the group of friends who frequent there. The community has embraced them, and we all see the efforts they are putting forth and can see that they want to build a better life than what they knew before. Sometimes, a small mistake can throw

We often see cases of truly remarkable reform—but it happens after someone is arrested, conditions are imposed, and a supervising pretrial officer is watching. And that is important. But here, the Murphys were self-motivated—they opted out of addiction and into family and work of their own accord.

*Second*, the Murphys have shown that they can and will abide by this Court's conditions and pose no danger to the community. Before filing this memo, defense counsel spoke with pretrial supervision officer Jon Bot. He confirmed that the Murphys have been perfect pretrial supervisees. Consider this: according to Officer Bot, the Murphys "randomly" stop by the probation office when they're in Spokane on errands and *offer* to give UAs.

*Third*, a time-served sentence is appropriate because, in this case, we run the very real risk of imposing a sentence that would cause more harm than good. Ms.

Murphy is away from addiction, away from crime, away from bad influences. To return her to the jail is to place her back among the very problems she has already conquered. We would accomplish little and risk much.

*Fourth*, Ms. Murphy's guideline range is relatively low for a federal sentencing. And if she backslides, if she returns to addiction or crime, this Court can immediately revoke her supervision and impose a complete guideline sentence. Thus, in imposing a time-served sentence, this Court wouldn't risk the chance to impose a harsher sentence if it becomes appropriate.

**B.     The Court should impose no financial penalties beyond the required restitution.**

Ms. Murphy requests imposition of $62,499 in restitution, owed jointly and severally with her husband, and no other financial penalties.

### III. Conclusion

For the reasons stated above, Stephanie Murphy respectfully requests a times-served sentence and three-year supervised release.

Dated: April 19, 2023.

        Federal Defenders of Eastern Washington & Idaho
        Attorneys for Stephanie Murphy

        s/Colin G. Prince
        Colin G. Prince, WSBA No. 43166
        10 North Post Street, Suite 700
        Spokane, Washington 99201
        t: (509) 624-7606
        f: (509) 747-3539

## SERVICE CERTIFICATE

I certify that on April 19, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorneys: Tyler Tournabene and Dan Fruchter.

<u>s/Colin G. Prince</u>
Colin G. Prince, WSBA No. 43166
10 North Post Street, Suite 700
Spokane, Washington 99201